Oh, yay. Oh, yay. Oh, yay. The Honorable Appellate Court Fifth District State of Illinois is now in session. The Honorable Justice Welch presiding along with Justice Moore and Justice Vaughn. The first case this morning is number 5 18 0246 people versus Crowder arguing for the appellant. Aaron Crowder is own some non arguing for the appellee. People of the state of Illinois is Aaron Shanahan. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please. Not only the clerk of the court is permitted to record these proceedings today. Council for the appellant. Ready to proceed? Yes, Your Honor. Let's go. We're sorry we're late, but we had problems. May please the court Council Assistant Appellate Defender Anton Nam on behalf of Aaron Crowder. There are two arguments on appeal. The focus today will be on the first argument, whether the trial court aired when it refused defenses. Jury instruction number one that Mr Crowder was justified in the use of force against Officer Morelli to defend against against Officer Morelli's use of excessive force in arresting Mr Crowder, um, thereby only presenting to the jury half of the picture or half of the applicable legal principles that he was charged with aggravated aggravated battery to a peace officer, disarming a peace officer and a misdemeanor resisting, um, a peace officer. Prior to his jury trial, the state explicitly stated on the record that it would proceed to trial only on the felony counts, um, and thereby dismiss the resisting peace officer count. Further pre trial, the defense put the state on notice that Mr Crowder would be claiming self defense. In fact, the state in a motion motion eliminate asked for a pretrial court ruling on the issues of excessive force. And you can find that motion eliminate at record pages C 164 through 165 and R 35 to 39. The state's argument at that point, um, incorporated state's instructions 20 and 21, which were later admitted at the jury instructions conference. But the trial court in a pretrial hearing did not make any ruins. Um, the court asked for jury instructions to address this issue. Accordingly, the parties began trial and proceeded presenting the evidence without knowing how the court would rule. But the state was still prepared. The state came to trial with instructions to tender in case Mr Crowder did allege self defense. That's pretrial beginning at the beginning of trial. During the course of the jury trial, Mr Crowder was not defending against a resisting charge. He wasn't defending against resisting morality. He was just defending against the charges of aggravated battery to morally and disarming a peace officers to disarming officer morality. That's at the start of the jury instruction conference. Right before they started, defense counsel told the trial court that Mr Crowder would not be alleging self defense. Um, and that's because, as the trial evidence presented, um, showed there was a witness booth, a witness Simpson and a witness holiday who said that they did not see during the period that they witnessed the event. They did not see Mr Crowder attempting to disarm or actually disarming morality, attempting to bite or actually biting morality. So the defense at that point was that, um, there would be no self defense that Mr Crowder did not bite or did not disarm officer morality. However, once the 20 and 21 to be admitted, that's when defense counsel in response, um, submitted defenses instruction number one, which the trial court denied. So the argument here is twofold. First of the trial court and tendering the state's instructions. 20 and 21 aired. Those are the ones that the defense objected to. Um, but even if this court finds that the trial court did not air in that sense, in light of the acceptance in light of the trial court's acceptance of state's instructions, 20 and 21, um, the defense. So Mr Crowder should have been allowed to tender his instruction defenses, uh, instruction number one. And that's because again, as stated, um, the trial evidence showed that, uh, Mr Crowder, um, did not bite or did not attempt to bite, did not disarm or attempt to disarm officer morality. So before the state's construction, the, there was no self defense because the defense was that they didn't, they did, or Mr Crowder did not, um, uh, bite or disarm. However, once the state put the, uh, issue of resistance resistance at play. So, um, I guess to put it simply, the defense was that he didn't batter, he didn't disarm, but once the state, um, inputted these two instructions that told the jury that informed the jury specifically of the issues of resistance, then Mr Crowder's position was that he had a specific defense defense to the resist resisting portion that hit his defense to resisting Morelli, um, during the arresting process was that Morelli used excessive force. Um, and that excessive force that was used against Mr Crowder was the, um, reason that defenses instruction number one was, was, um, was justified here, was needed here for the jury to get the full picture to actually know that of course, while a private citizen cannot resist arrest, even if it's in a lawful arrest, there are, are, there is a specific exception here that if the officer uses excessive force that, um, if an officer begins off using excessive force, which, uh, Mr Crowder put in, um, in his testimony. So at trial, the jury heard that, um, Mr Crowder submitted peacefully that he tapped out his mother's, it was the excessive, was that forced? Allegedly the handcuff was too tight. Yes, your honor. So the handcuff wasn't just that it was too tight. It was tight enough that it cut through his skin. And when a handcuff cut through your skin, if you were swinging it and moving it around and stuff like Well, that's, that's officer Morales position was that he was swinging and moving, but Mr. Crowder's position, which the jury also heard. So there's that slight piece of evidence that, um, that Mr. Crowder stated, he submitted peacefully that he tapped on his mother's door. He raised his hands, he turned around and that's when Morelli slapped the, um, handcuffs on his wrist. Um, and this is when he was, he was telling Morelli, you know, I'm, I'm submitting, um, I'm letting you arrest me. So there's the handcuff that goes on and immediately it's so tight that it cuts through his skin. I was under the impression that there were two officers involved here. One finally, they finally got enough force to get him arrested. That's correct, your honor. But the second officer comes way later. So as a way later, meaning, um, I think officer Morales said that the whole incident lasted about 10, 15 minutes. Um, and most of this is taking place with just officer Morelli and Mr. Crowder. Later on, there's an officer Parker that comes on the scene, but that's after the initial, um, the initial scuffle that they set happened. Was he cuffed at that time or just had on one arm? So I think there's varying testimony. Um, officer Morelli and Mr. Crowder says that he was handcuffed at least in that one arm. Some of the witnesses say that he was his, both of his arms were actually taken. So there's, um, witnesses booth, Simpson and holiday, three different witnesses. Um, I think some of the witnesses state that, you know, when they observed, uh, Mr. Crowder and officer Morelli, both of his arms were contained. Um, and I think there's some, um, some testimony about that. There's also, uh, um, a passerby who also assists. Um, I think he had pre military experience, but there was a citizen who also assisted Morelli, but the second officer comes later. Sorry, your honor. That was Mr. Henderson. That's correct. Your honor. Um, so I guess the main point here is that initially when he alleged that there was no self-defense needed, that was because his, the evidence presented was that he did not disarm, that he did not bite officer Morelli. But once the state put the resisting arrest at play, that's when the defense came back and said, Hey, if you're going to allow that instruction to come or those instructions to come in, then Mr. Um, Mr. Crowder should be able to present defenses instruction number one to give the jury a full picture. And in this case, it wasn't, it wasn't that the jury just, um, made the decision in a short amount of time. It's the jury asked for the taser video again. And here, as this court knows, um, Mr. Crowder was tasered at least twice. He was, uh, stunned drive, which is trying to put the taser on his person directly. Um, and as this court knows through the exhibits, the pictures, um, uh, officer Morelli also had a canine partner Jacks. Um, and officer Jacks was repeatedly told to, um, bite and engage Mr. Crowder. So this wasn't an incident where, um, Mr. Crowder was not injured. It began with the handcuffs. It began with the risk leading the skin, um, cutting through the skin. Then it went on to the tasers. It went on to the scuffle. It went on to him being on the ground and then Jacks repeatedly engaging and biting him. Now, was there any bite marks on the officer? So officer Morelli stated that he was bitten. Um, the question was, were there any bite marks shown on the officer? I think this court will have to make that determination through the photos because there was another officer who observed officer Morelli's hands and said it looked red. There was a medical, um, reports on it. But I think if this court looks at the photos, I think it's kind of up to debate because Mr. Crowder stated that he didn't. Um, none of the witnesses that, as I mentioned previously saw him bite. So, um, my question is, were there any bite marks ever shown? So officer Morelli says that there was. I didn't ask that. Were there shown any to the jury? The photo of officer Morelli's hands were shown. And were there bite marks on it? So I think that's up to debate. So the jury had to make that determination. They bit him or he bit himself. Is that the question? I mean, I guess there was issues with, um, potentially Jack's biting him. I know there was evidence that or witnesses that stated that that didn't happen. But there was there was that was a contentious matter, Your Honor. Whether there was a bite mark on his hand. Okay. Constantly happily. That's it. Happily, please. You're ready. Thank you, Your Honor. May it please court counsel. My name is Sharon Shanahan, and I represent the people of the state of Illinois, focusing on on issue number one, the jury instruction, which counsel for the defendant has just argued. I'd like to point out three very fundamental flaws in the argument. First, the jury was properly instructed about resisting arrest. There are two instructions that are used when police officer attempts to arrest someone in the purse, and there is uh, resistance. It says, uh, one deals with the police officer's authority to use force in effectuating a result or an arrest. That's 24-25.12. And the other is a private citizens right to resist arrest, even if the arrest was unlawful. That's 24-25.20. Now, defendant argues that while the state withdrew its its charge, uh, its misdemeanor charge, so he didn't know he had to defend against that and that these instructions are solely for the misdemeanor charge that again is flawed because it, uh, the misdemeanor is a lesser included defense of aggravated battery of a police officer. Um, and because it's a lesser included defense, it's not error to instruct the jury. And the state has cited several cases in its brief in which exactly that was done to say that and the reply brief defendant said he thought he would not have to defend against the charge of resisting in front of the jury. Well, of course he had to defend against that because, uh, if you have to defend against five things, for example, in in in one case, and these three are exactly the same as this other case that only requires a three, you have to defend against those three things. You have to defend against them. The lesser included defense by its name shows that everything required in the misdemeanor had to be proved. And the defendant knew it when he looked at the elements of I said we cited this court's decision in Melvin Taylor, uh, Stephen Taylor, which specifically followed Melvin Taylor. Um, uh, with the nasty. Um, and as and we've also cited, uh, a very recent case 2020 which says that resisting arrest is a lesser included defense of aggravated battery of a police officer. Um, so now let's move on to the second flaw in defendant's argument. And that is that the defense counsel specifically told the trial court that he did not want the jury instructed on self defense. And this instruction that the defendant later on wanted is just a mutated self defense instruction. I mean, let's look at the language in the two. Um, I P I 24-25.06 says a person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force. Defendants, uh, proposed instruction, non I P I instruction is virtually identical except it adds the language against the police officer went and went into the extent that he reasonably believes. And here's other added language. The police officer has used excessive force and arresting the person. And then it goes back to the regular language and the person himself reasonably believes that such conduct is necessary. It's a self defense instruction. So if if, as defendant argues here today that, um, after the state was allowed to use its two instructions, he changes his mind. What he should have done is just ask for self defense instruction. I mean, that's that's the law is, I 51 says that, um, if if the I P I correct instructions correctly and adequately charged the jury, the use of non I P I instructions, uh, is improper. It says it I P I criminal shall be used unless it does not accurately state the law. Well, no one has said that that the self defense instruction does not accurately state the law. So if if, uh, defendant wanted to change his mind afterwards, what he should have done is just ask for self defense instruction. And it's rather interesting that this instruction that he did put forward comes from an unpublished case. People versus meanders, uh, 2014, uh, Fourth District case. It's exactly the same instruction. So number one, it's an unpublished case. And and number two, the means is cord said that it's not an accurate statement of the law. Um, because you have to decide, uh, when the resistance came about. That's that's, uh, and that's what is the flaw in this argument is that the defendant wants to say the police officer used excessive force. Well, the important thing, the accurate thing is, when did that happen? Uh, and that's the thing that if the police officer just goes up and uses excessive force without anything happening, then there is some logic in this. But the reason that the means is court found this an inaccurate statement of the law, um, is because this instruction and here I'm quoting from this unpublished decision that this instruction does not indicate a person is justified to use force only when the police were the first to use force. So even hand the state messed up by giving the use of force instruction, or was that specifically authorized by people versus Melvin Taylor? Uh, as I understand it was, it certainly was approved by Melvin Taylor. And and the use of force instructions are I. P. I. Instructions, uh, that are normally given in in, uh, cases such as this. And that's what that's what the discussion that that counsel for the defendant was talking about is, uh, he said, I don't want a self defense instruction. And, um, and then they had the jury instruction conference in which the state argued that it wanted these, uh, use of force instructions. They were allowed. And then he he says, Well, now I want my non I. P. I. Instruction. Um, and so does that answer your question, Your Honor? I believe so. All right. Thank you. Uh, I'd like to move on briefly to the third flaw in the argument, and that is that this non I. P. I. Instruction that the defendant wanted, uh, didn't support his theory of the case. It's crystal clear, both in the defendant's, um, defendant's theory of the case was I didn't do anything. I saw that police officer coming. I knocked on the door. I told my mom a policeman's coming, and then I sat down and put my hands up, and I never fought with him. I never did anything. It was not that he was justified in fighting back. It was that he didn't fight at all. So if you get into this proposed non I. P. I. Instruction, it's dealing with. Well, I did fight, but I had a good reason for it. That wasn't his theory of the case. You can't go through a whole case with one theory and then suddenly say, Oh, I've changed my mind. And even if you try, where's the evidence that was presented a trial that he was, um, himself. The only thing that council sites as evidence that he was that he did make this self defense argument at trial is that he said he was afraid of the police officer. Well, yes, he was afraid of the police officer, and therefore he didn't fight. That was his theory of the case. Not he was afraid of the police officer, and he had to fight back. So this instruction doesn't even meet the defense theory of the case. Are there any other questions? No questions. I don't believe. Thank you. Council rebuttal. Yes, rather. Um, I do want to quickly address. So the state claims that, um, or the state's claims of first the first flaw. Um, the state in its brief on pages three through four, I believe, um, sites to cases such as Sanchez, Hill, Brown and Pedersen, um, for the, uh, for resisting arrest, being a lesser included. And while that's true, your honors, if you if you guys look at Sanchez, Hill, Brown and Pedersen, if your honors looks at those cases, um, the the problem there is that the jury was actually given a verdict form of the lesser included or the resisting arrest charge. So, um, if this court looks at Sanchez, Hill, Brown, Pedersen, the jury was able to either, um, convict him of the aggravated battery or of the resisting charge. I believe there's some of the cases, I think maybe Hill, uh, that discusses whether the jury should have been given this lesser included verdict form, the lesser included charge. Um, but all of these cases involve, uh, where the jury was actually given that opportunity or should have been given that opportunity to find the defendant guilty of, um, the lesser included of resistance. And in Mr. Crowder's case, that's not, that's not the case here. The case here is that Mr. Crowder never asked for a lesser included charge. Mr. Crowder was just defending against the aggravated battery and the, um, the disarming a peace officer. So the jury was never given a verdict for him. Mr. Crowder never asked the jury to be given this verdict for for the resisting, because if the would have asked for the self-defense, um, instruction. And in this case, once the state put the resistance at issue, then Mr. Crowder did put the, um, defendant's instruction number one, um, before the trial court. And to kind of reiterate, the trial court was given an opportunity to determine this before trial, before the jury instructions conference, but the trial court didn't do that. Um, and I believe the issue also is, um, highlighted in People v. Hill, which the state cited in its brief on page three. Um, there it talks about for aggravated battery, the, there's a knowing intent or the knowing elements, right? The intent element, uh, for aggravated battery, it's the insulting or the intent element is that the defendant intends to resist. And once that was put at issue in, in Mr. Crowder's case, once the state put the issues of resisting, um, before the jury, that's when the defense asked for the jury instruction, um, or defense's instruction number one. Um, because of course you can be found, uh, guilty for the lesser included offense. You know, as long as the jury is given that verdict form, um, because that knowing element, that intent element is different. Um, and if this, if this court, uh, reviews Hill again, that's the most recent case, the state cited the 2020 case from the first district. It talks about that, that element. And that's, that's the point here is when Mr. Crowder believed that he was only being, or he was only being tried for the, uh, disarming and the aggravated battery, then he didn't have a self defense issue because his claim was, as the state said, I didn't do those things. I didn't do any of that. I didn't disarm. I didn't fight Murrell or officer Morelli. But once the resisting came into play, um, once the, uh, the jury was told that, you know, he resisted, he, he resisted the officer and he can never resist the officer then for the jury to get that full picture. Um, and not just half the picture, the jury needed that instruction to tell, um, the jurors that there is an exception that when the police officer uses excessive force, um, or starts off using excessive force, then a defendant or a private citizen may have, um, a justified reason or a justified use of force. Thank you, guys. Thank you, Your Honor. Unless there's any other questions, we ask that Mr Crowder receive a new trial on these matters. Thank God's case will be taken under advisement in order issued in due course. Your excuse. Thank you, Your Honor. Thank you.